IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES S. TENNANT and SARAH J. TENNANT, husband and wife, and JOHN W. MCILVANIE and ALICE L. MCILVAINE, husband and wife,<br><br>      Plaintiffs,<br><br>    v.<br><br>RANGE RESOURCES - APPALACHIA, LLC,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 18-1533<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

In this diversity action, Plaintiffs James S. Tennant and Sarah J. Tennant (the "Tennants") and John W. McIlvaine and Alice L. McIlvaine (the "McIlvaines") claim that Defendant Range Resources-Appalachia, LLC breached certain oil and gases leases between the parties by failing to demonstrate that post-production costs deducted from their royalty payments resulted in a net increase in the value of gas produced under those leases. Presently before the Court are Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Partial Summary Judgment and materials in support. (Docket Nos. 43-50). For the reasons that follow, Defendant's Motion will be granted, and Plaintiffs' Cross-Motion will be denied.

**II. PROCEDURAL HISTORY**

Plaintiffs commenced this case in the Court of Common Pleas of Washington County, Pennsylvania by filing a Complaint on October 16, 2018. (Docket No. 1-2). Defendant removed the action to this Court on November 15, 2018, and then filed an Answer to the Complaint on

1

December 6, 2018. (Docket Nos. 1, 6).

Following a post-discovery status conference held on January 31, 2020, the Honorable J. Nicholas Ranjan, who was the presiding judge at the time,[1] ordered the parties to cross-file motions for summary judgment pursuant to the schedule outlined in the amended case management order. (Docket Nos. 41, 42). Each party filed a timely Motion, Brief in Support and an Appendix, as well as their respective responses to same. (Docket Nos. 43-50). The matter is now ripe for disposition.

### III.     RELEVANT FACTS[2]

The Tennants own oil and gas underlying a 99.15625 acre parcel of property in Washington County, Pennsylvania identified by Tax Parcel No. 120-007-00-00-0027-00 (the "Tennant Property"). (Docket No. 1-2, ¶ 8). The McIlvaines own oil and gas underlying the following two parcels of property in Washington County, Pennsylvania: a 22.6487 acre parcel identified by Tax Parcel No. 120-007-00-00-0026-04 (the "McIlvaine 22 Acre Property"); and a 29.98 acre parcel identified by Tax Parcel No. 120-011-00-00-0033-01 (the "McIlvaine 29 Acre Property"). (*Id.*, ¶¶ 13.a, 13.b).

On September 10, 2013, Plaintiffs entered into identical oil and gas leases with Defendant covering the Tennant Property, the McIlvaine 22 Acre Property and the McIlvaine 29 Acre Property (collectively, the "Leases"). (Docket Nos. 1-2, ¶¶ 9, 14, 15, Exs. A, B; 1-3, Ex. C).[3] The Leases contain a royalty clause pursuant to which Defendant agreed to pay Plaintiffs "[f]or gas and other hydrocarbons produced with gas . . . as royalty for the gas, saved and sold from the

---

1    The case subsequently was re-assigned to this member of the Court.

2    The factual background is derived from the undisputed evidence of record, and the disputed evidence is viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

3    Given that the Leases are identical in all respects, the Court will only cite to the Lease covering the Tennant Property, (*see* Docket No. 1-2, Ex. A), in order to streamline citations to the record.

Leased Premises, eighteen percent (18%) of the net amount realized by [Range] for the sale and delivery of such gas." (Docket No. 1-2, Ex. A, ¶ 5(B)).  The royalty clause authorizes the deduction of Plaintiffs' pro-rata share of certain specified post-production costs.  (*See id.*, ¶ 5(C)).

Each Lease contains an Addendum specifying that, in the event of any inconsistency between the terms and conditions in the Lease and those in the Addendum, "the provisions of the Addendum shall prevail and supersede the inconsistent provisions of the main body of this [L]ease."  (Docket No. 1-2, Ex. A, Addendum).  Relevant here, the Addendum contains the following royalty clause which addresses the applicability of post-production costs to royalty payments:

> The royalties payable to Lessor hereunder shall never be charged with any part of the costs and expenses for exploration, drilling, development, production, storage, processing, compressing, marketing or transportation to the point of first sale of the production from the leased premises, except that Lessor's royalties shall bear its proportionate share of any severance, ad valorem, windfall profits or other excise taxes attributable to the production of oil and/or gas from the leased premises; provided, however, that any expense incurred by Lessee for the purpose of enhancing the value of the oil and/or gas or other products produced from the leased premises, or any property pooled therewith, to receive a better price and any deductions from price or volumes for processing, compressing, marketing or transportation by a purchaser of the production from the leased premises may be deducted from Lessors' share of production so long as such deductions are based upon the Lessee's actual cost of such enhancements or charges.  These deductions shall only be charged to the Lessor if they result in a net increase in the value of the oil and/or gas or other products produced from the leased premises, or any property pooled therewith.  It is the intent to ensure that the Lessors receive a price that is not less than, or more than, the price received by Lessee including all enhancements received by Lessee less any charges and deductions made by a purchaser.

(*Id.*, Addendum, ¶ 12) (hereinafter, "Addendum ¶ 12").

Defendant placed the Tennant Property, the McIlvaine 22 Acre Property and the McIlvaine 29 Acre Property into certain drilling units.  (Docket No. 1-2, ¶¶ 20-22).  Based on production of those drilling units, Defendant made royalty payments to Plaintiffs.  (*Id.*, ¶ 23).  Defendant

provided Plaintiffs with royalty statements accompanying the payments which showed the deduction of certain post-production costs for transportation, gathering, processing, firm capacity and purchased fuel. (*Id.*, ¶¶ 24-25; Docket No. 1-3, Exs. E, F). However, Plaintiffs claim that the royalty statements did not contain any "identification, demonstration or proof that any of the assessed 'deductions' resulted in a 'net increase' in the value" of the gas to substantiate the deductions. (Docket No. 1-2, ¶ 28).

Plaintiffs initiated this action against Defendant, asserting a single breach of contract claim. (*See generally* Docket No. 1-2). As alleged in the Complaint, Plaintiffs claim that Defendant "has breached its contractual obligations under the Leases by deducting post-production costs ***without demonstrating*** that said costs resulted in a 'net increase in the value' of the produced hydrocarbons."[4] (*Id.*, ¶ 40) (emphasis added); *see also id.*, ¶ 41 (alleging that Defendant "has not demonstrated or established" that post-productions costs reflected in royalty payments to Plaintiffs resulted in a net increase in the value of the gas on which their royalties were calculated). Consequently, Plaintiffs allege that Defendant's deductions of post-production costs are improper and unauthorized by Addendum ¶ 12 and have damaged Plaintiffs. (*Id.*, ¶ 42).

Plaintiffs' deposition testimony confirmed that their breach of contract claim is premised on Defendant's alleged duty to demonstrate to them that post-production costs deducted from their royalty payments resulted in a net increase in the value of the gas produced and that Defendant

---

4   Plaintiffs' breach of contract claim originally contained a second component contending that Defendant improperly deducted costs related to purchased fuel for well pad operations and equipment from their royalty payments, and never paid a royalty on such volumes. (*See* Docket No. 1-2, ¶¶ 29-32). Plaintiffs subsequently withdrew that aspect of their claim. (*See* Docket No. 47 at 19, n.1) ("To the extent that the Complaint also asserts purchased fuel deductions are related to wellhead equipment, the Plaintiffs are no longer pursuing that. The purchased fuel charge the Plaintiffs complain-of is on the interstate pipeline."). However, to the extent that Plaintiffs now attempt to include a claim related to purchased fuel as an aspect of their claim concerning "net increase" in value, (*see id.*), their breach of contract claim fails as a matter of law for the reasons discussed herein.

failed to show same.[5] Mr. McIlvaine, who is a lawyer and negotiated the Leases on behalf of Plaintiffs,[6] testified that "in order to take deductions, according to that No. 12 royalty clause in the addendum, [Range has] got to show us a better price and [Range has] got to show us that they enhanced the value of the oil and the gas.  And [Range hasn't] done that. . . ." (Docket No. 45-3 at 6:5-7:21, 9:14-21, 18:4-12).  Mr. McIlvaine reiterated that "no one has ever showed [him] where [Range] got a better price and that [Range] enhanced the value of the oil and gas. . . ."  (*Id.* at 24:8-10); *see also id.* at 36:7-12 (confirming that Plaintiffs' complaint and his testimony is that Range "has never proved" to Plaintiffs that it was complying with Addendum ¶ 12), 47:15-19, 49:15-18 (asserting Range must show compliance with Addendum ¶ 12).

Ms. Tennant likewise testified that it was "true" that Plaintiffs' "primary complaint here is that Range has breached a duty to demonstrate to [them] that the deductions charged resulted in a net increase in the value of the gas."  (Docket No. 45-2 at 32:17-22); *see also id.* at 30:15-18 (testifying "[Range] need[s] to show" that post-production costs resulted in a net increase in value of the gas).  Additionally, Mr. Tennant testified that his "understanding" of the Leases was that if "Range can't provide [Plaintiffs] with evidence that [it] got the best price for [Plaintiffs'] gas and [Range] can't provide . . . evidence that . . . [it] enhanced the value of the gas . . . [it's] breaching the [Leases]."  (Docket No. 45-1 at 24:13-19); *see also id.* at 28:18-21 ("I'm saying, Range, prove to me that you're increasing – enhancing the value of that gas, prove to me that you're getting the best price. . .").  In Mr. Tennant's estimation, "the burden is on Range" to show that post-

---

[5]    Plaintiffs' responses to Defendant's written discovery requests align with their deposition testimony and confirm that they claim Addendum ¶ 12 "places the burden solely on Range to demonstrate and prove that the purported post-production activities and corresponding costs resulted in a 'net-increase' in the 'value' of the produced hydrocarbons" and that Defendant breached Addendum ¶ 12 by failing to "produce[] documents which identify any 'net-increase' in value attributed to any alleged post-production activity." (Docket Nos. 45-5 at 5-7, ¶¶ 4-6; 45-6 at 5 and 6, ¶¶ 3, 5; 45-7 at 5-7, ¶¶ 4-6; 45-8 at 5 and 6, ¶¶ 3, 5).

[6]    Pursuant to the parties' stipulation, Defendant did not depose Ms. McIlvaine. (Docket No. 45-3 at 4:14-5:7).

5

production costs enhanced the value of the gas. (*Id.* at 27:4-5, 30:25-31:1, 32:4-5; 45:9-10).

Despite Mr. Tennant's testimony that the burden is on Range, Mr. McIlvaine acknowledged that "the person [who's] claiming" a breach of contract has the burden to prove that the contract has been breached. (Docket No. 45-3 at 51:3-9). Mr. McIlvaine conceded that "there [are] no words in [Addendum ¶ 12] that says Range must prove" that the post-production costs reflected in the royalty payments resulted in a net increase in the value of the gas produced under the Leases. (*Id.* at 26:20-24). Again, when asked whether there is anything "in the words of [the] Lease that requires Range to show [him a net increase] on any particular form or royalty statement or anywhere," Mr. McIlvaine responded, "[n]ot to my knowledge." (*Id.* at 27:25-28:3). He admitted that there are "no expressed words" in the Lease that "puts the burden on Range to demonstrate to [Plaintiffs] that it's enhanced the value of the gas," but suggested "it's implied." (*Id.* at 50:9-19).

Finally, Mr. McIlvaine testified that he does not have any evidence that the post-production costs deducted from the royalty payments did not result in a net increase in the value of the gas produced under the Leases. (*See* Docket No. 45-3 at 27:5-18, 51:16-19). Mr. Tennant and Ms. Tennant likewise testified that they do not have any such evidence. (*See* Docket Nos. 45-1 at 26:25-27:3, 58:7-13 (Mr. Tennant stating that "[t]he only proof I have is that [Range has] not replied to our request to provide evidence . . ." and further stating that "the royalty statements and [Addendum] paragraph 12 stand alone" in response to whether he has any evidence to support the contention that the post-production costs do not enhance the value of the gas); 45-2 at 8:16-20, 39:2-8 (Ms. Tennant stating "[n]ot really" in response to whether she has "any evidence or proof that the costs being incurred by Range and being charged in part to [her] are not enhancing the value of the gas" and conceding that she "really [didn't] know if [Range] did or . . . didn't get a

better value or the best price.")).

IV.     **STANDARD OF REVIEW**

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To withstand summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson*, 477 U.S. at 248. When considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations, but rather is limited to deciding whether there are any disputed issues that are both genuine and material. *Id.* at 249.

If the moving party carries its burden under Rule 56, the non-movant must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations or mere suspicions in attempting to survive summary judgment. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477 U.S. at 325). The non-movant must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving party will bear the burden of proof at trial." *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) (citation omitted).

These standards remain the same when parties file cross-motions for summary judgment. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance

with the Rule 56 standard." *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (internal quotation marks and citation omitted).

## V. DISCUSSION

To reiterate, as alleged in the Complaint, Plaintiffs claim that Defendant breached Addendum ¶ 12 "by deducting post-production costs **without demonstrating** that said costs resulted in a 'net increase in the value' of the produced hydrocarbons." (Docket No. 1-2, ¶¶ 38, 40) (emphasis added); *see also id.*, ¶ 41 (alleging that Defendant "has not demonstrated or established" that post-productions costs reflected in royalty payments to Plaintiffs resulted in a net increase in the value of the gas on which their royalties were calculated). The fact that Plaintiffs framed their breach of contract claim in this manner (*i.e.*, as breach of a purported duty to demonstrate supposedly contained in Addendum ¶ 12) is confirmed by their deposition testimony and responses to Defendant's written discovery requests summarized above, (*see supra* at 4-5), as well as their Motion for Partial Summary Judgment and supporting brief. *See* Docket No. 46, ¶ 21 ("Range's liability is clear. It has deducted post-production costs without showing – or being able to demonstrate, that these deductions are authorized under Addendum 12."); *see also id.*, ¶¶ 11-15 (repeatedly asserting that Defendant has not demonstrated that various post-production costs are proper under Addendum ¶ 12); Docket No. 47 at 5 (". . . Addendum 12 imposes an obligation on Range to substantiate its deductions.").

Defendant argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim for several reasons. First, Defendant has no duty to demonstrate that post-production costs reflected in Plaintiffs' royalties resulted in a "net-increase" in the value of the gas produced under the Leases because no such contractual duty exists. (Docket Nos. 44 at 16-19; 49 at 6-8). Accordingly, Defendant contends that Plaintiffs' breach of contract claim fails as a matter of law.

8

(Docket No. 44 at 16). Second, even if Plaintiffs' breach of contract claim is construed as alleging that Defendant improperly deducted post-production costs from Plaintiffs' royalties, Plaintiffs cannot meet their burden of proving same. (Docket Nos. 44 at 19-24; 49 at 12-14). Finally, although Defendant bears no burden of proof to disprove Plaintiffs' breach of contract claim, the record evidence establishes that post-production costs it incurs result in an increase in the value of the gas produced under the Leases. (Docket Nos. 44 at 24-25; 49 at 14-17).

Plaintiffs conversely assert that there is no genuine issue of material fact concerning Defendant's liability for deducting post-production costs from their royalty payments because no such costs resulted in a net increase in the value of the hydrocarbons produced under the Leases. (Docket No. 47 at 12). Plaintiffs contend that the case should proceed only for the calculation of damages that they are owed by Defendant, which they submit is the value of all post-production cost deductions. (*Id.*). In advancing their arguments, Plaintiffs maintain that "Addendum 12 imposes an obligation on Range to substantiate its deductions," but Defendant has presented "no data or information to show that each of its post-production costs resulted in a net increase in the value of the hydrocarbons produced from the leased premises." (*Id.* at 5); *see also* Docket No. 50 at 8 (arguing that "the burden is on Range to proffer evidence demonstrating" a net increase in value). Although Plaintiffs do not point to any specific language in Addendum ¶ 12 that requires Defendant to demonstrate or "substantiate the deductions it charges," Plaintiffs suggest that this is a "built-in obligation." (Docket No. 50 at 6); *see also id.* at 7 ("When Range charges post-production costs to the Landowners, it accepts the obligation to justify the deductions it charges . . . ."). Perhaps recognizing there is no duty to demonstrate, Plaintiffs shift their argument and contend that they are entitled to summary judgment because Defendant's practice of deducting post-production costs from their royalties constitutes a material breach of the Leases for the

9

following reasons: (1) certain post-production cost deductions (gathering, firm capacity and purchased fuel deductions from the gas royalties and processing cost deductions from the natural gas liquids royalties) relate to activities that occur prior to the point of the first sale and thus are prohibited by Addendum ¶ 12; and (2) all post-production cost deductions are improper because they are non-specific to the hydrocarbons produced from the relevant drilling units and the weighted average calculations utilized by Defendant are inconsistent with Addendum ¶ 12. (Docket No. 47 at 13-25).

> **A. The Plain Language of Addendum ¶ 12 Does Not Impose Upon Defendant a Duty to Demonstrate That Post-Production Costs Deducted From Plaintiffs' Royalty Payments Resulted in a "Net Increase" in the Value of the Gas Produced Under the Leases.**

Under Pennsylvania law, a plaintiff must plead and prove the following to establish a breach of contract claim: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."[7] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). As discussed, Plaintiffs' Complaint alleges that Defendant "breached its contractual obligations under the Leases by deducting post-production costs *without demonstrating* that said costs resulted in a 'net increase in the value' of the produced hydrocarbons." (Docket No. 1-2, ¶ 40) (emphasis added). Plaintiffs repeatedly confirmed by their deposition testimony, responses to written discovery and Motion for Partial Summary Judgment that Defendant allegedly breached Addendum ¶ 12 by failing to demonstrate same. At issue is whether the plain language of Addendum ¶ 12 imposes any such duty upon Defendant.

At bottom, then, this is a case about contract interpretation. The Pennsylvania Supreme Court has recognized that an oil and gas lease "is in the nature of a contract and is controlled by

---

[7] The parties do not dispute that Pennsylvania law applies in this diversity action.

principles of contract law." *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). Therefore, "[i]t must be construed in accordance with the terms of the agreement as manifestly expressed, and '[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.' " *Hall v. CNX Gas Co., LLC*, 137 A.3d 597, 601 (Pa. Super. Ct. 2016) (quoting *J.K. Willison v. Consolidation Coal Co.*, 637 A.2d 979, 982 (Pa. 1994)). The Court interprets the unambiguous portions of a contract as a matter of law, and the fact-finder interprets the ambiguous portions. *Chambers v. Chesapeake Appalachia, L.L.C.*, 359 F. Supp. 3d 268, 275 (M.D. Pa. 2019) (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 n.10 (3d Cir. 1980)).

Accordingly, the Court must first determine as a matter of law whether contractual language is ambiguous. *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).  In determining whether a contract is ambiguous, the Court must consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Baldwin*, 636 F.3d at 76 (quotation omitted). To reiterate, the plain meaning of the words used in the contract controls, not the "silent intentions" of the parties. *J.K. Willison*, 637 A.2d at 982.  Additionally, the Court "must assess the writing as a whole and not in discrete units." *DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1143 (Pa. Super. Ct. 1987).  Finally, the Court is mindful that summary judgment is only appropriate for an issue of contract interpretation where "the contract is so clear that it can be read only one way." *Allied Erecting & Dismantling Co., Inc. v. USX Corp.*, 249 F.3d 191, 201 (3d Cir. 2001) (citation omitted).

11

Against these principles, the Court considers Addendum ¶ 12 which, it is important to repeat, provides as follows:

> The royalties payable to Lessor hereunder shall never be charged with any part of the costs and expenses for exploration, drilling, development, production, storage, procession, compressing, marketing or transportation to the point of first sale of the production from the leased premises, except that Lessor's royalties shall bear its proportionate share of any severance, ad valorem, windfall profits or other excise taxes attributable to the production of oil and/or gas from the leased premises; provided, however, that any expense incurred by Lessee for the purpose of enhancing the value of the oil and/or gas or other products produced from the leased premises, or any property pooled therewith, to receive a better price and any deductions from price or volumes for processing, compressing, marketing or transportation by a purchaser of the production from the leased premises may be deducted from Lessors' share of production so long as such deductions are based upon the Lessee's actual cost of such enhancements or charges.  These deductions shall only be charged to the Lessor if they result in a net increase in the value of the oil and/or gas or other products produced from the leased premises, or any property pooled therewith.  It is the intent to ensure that the Lessors receive a price that is not less than, or more than, the price received by Lessee including all enhancements received by Lessee less any charges and deductions made by a purchaser.

(Docket No. 1-2 at 28).  The language of Addendum ¶ 12 is clear and unambiguous that it ***does not*** impose upon Defendant a duty to demonstrate that post-production costs deducted from Plaintiffs' royalty payments resulted in a net increase in the value of the gas produced under the Leases.  *See J.K. Willison*, 637 A.2d at 982 (the plain meaning of the words used in the contract controls, not the "silent intentions" of the parties).  Simply, nothing in the plain language of Addendum ¶ 12 imposes such an obligation.  Mr. McIlvaine, who is a lawyer and negotiated the Leases on behalf of Plaintiffs, acknowledged that "there [are] no words in [Addendum ¶ 12] that says Range must prove" that the post-production costs reflected in the royalty payments resulted in a net increase in the value of the gas produced under the Leases.  (Docket No. 45-3 at 6:5-7:21, 9:14-21, 26:20-24).  To underscore this point, Mr. McIlvaine also responded, "[n]ot to my knowledge" when asked whether there is anything "in the words of [the] Lease that requires Range

to show [him a net increase] on any particular form or royalty statement or anywhere." (*Id.* at 27:25-28:3).

Given that the plain and unambiguous language of Addendum ¶ 12 does not impose on Defendant a duty to demonstrate that post-production costs deducted from Plaintiffs' royalty payments resulted in a net increase in the value of the gas produced, it is impossible for Defendant to have breached the Leases. Consequently, Plaintiffs cannot establish their breach of contract claim as pled in their Complaint. *See Ware*, 322 F.3d at 225 (requiring "breach of a duty imposed by the contract") (quoting *CoreStates Bank*, 723 A.2d at 1058)). As another court in this District has held, "it is impossible for [the lessee] to be held responsible for terms that it did not contract for." *Gottselig v. Energy Corp. of Am.*, Civ. No. 15-971, 2015 WL 5820771, at *6 (W.D. Pa. Oct. 5, 2015) (concluding in case involving alleged underpayment of royalties on oil and gas leases that lessee did not breach leases by allegedly failing to inform landowners of certain information, including nature of relationship between lessee and its marketing affiliate, where title to gas transferred, deduction of certain expenses, and that leases permitted drilling of deeper shales, because language of leases was plain and unambiguous that it did not impose any such duties on lessee).

Perhaps recognizing that the Leases impose no duty to demonstrate upon Defendant, Plaintiffs argue in their briefing papers that Defendant has a "built-in obligation to substantiate the deductions it charges." (Docket No. 50 at 6). This argument coincides with Mr. McIlvaine's deposition testimony conceding that there are "no expressed words" in the Leases that "puts the burden on Range to demonstrate to [Plaintiffs] that it's enhanced the value of the gas," but insisting that "it's implied." (Docket No. 45-3 at 50:9-19). Plaintiffs' contention that there is an implied duty or obligation for Defendant to demonstrate or substantiate deductions for post-production

costs is undercut by the fact that the breach of contract claim as pled in their Complaint is not premised on breach of any alleged implied duty. To reiterate, an oil and gas lease "must be construed in accordance with the terms of the agreement as manifestly expressed, and '[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.' " *Hall*, 137 A.3d at 601 (quoting *J.K. Willison*, 637 A.2d at 982). Accordingly, the Court is precluded from interpreting Addendum ¶ 12 to infer any implied duty as Plaintiffs now suggest.

For these reasons, Plaintiffs' breach of contract claim fails as a matter of law, and summary judgment is therefore warranted in favor of Defendant.

### B. **Even if Plaintiffs' Breach of Contract Claim is Broadly Construed, Plaintiffs Have Failed to Show That There is No Genuine Dispute of Material Fact That Defendant Improperly Deducted Post-Production Costs From Their Royalty Payments.**

Despite Plaintiffs' insistence that the burden is on Range to show that post-production costs deducted from their royalty payments resulted in a net increase in the value of the gas produced under the Leases, (*see* Docket Nos. 45-1 at 27:4-5, 30:25-31:1, 32:4-5 45:9-10; 47 at 25), Mr. McIlvaine conceded that "there [are] no words in [Addendum ¶ 12] that says Range must prove" that matter. (Docket No. 45-3 at 26:20-24). Mr. McIlvaine also acknowledged that "the person [who's] claiming" a breach of contract has the burden to prove that the contract has been breached. (*Id.* at 51:3-9).

Mr. McIlvaine is correct that a plaintiff asserting a breach of contract claim bears the burden of proof concerning the elements of his claim and must establish them by a preponderance of evidence. *Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 102 (3d Cir. 2001) (applying Pennsylvania law); *see In re Estate of Dixon*, 233 A.2d 242, 244 (Pa. 1967) ("In any contract action, . . . the claimant bears the burden of proving the terms of the contract."); *Snyder*

14

*v. Gravell*, 666 A.2d 341, 343 (Pa. Super. Ct. 1995) ("[T]he party having the burden of proof in a contract matter must sustain it by a preponderance of the evidence."); 23 *Williston on Contracts* § 63:14 (4th ed.) ("The plaintiff or party alleging the breach has the burden of proof on all of its breach of contract claims."). A leading gas and oil treatise confirms that the burden remains the same in disputes involving royalty payments:

> In the event of dispute between a royalty owner or other nonoperator and an operator concerning payments due the nonoperator, information pertaining to "price," "value," or "proceeds" of the nonoperator's share of production may be more readily available to the operator than to the nonoperator. Nevertheless, by the weight of authority, the lessor or other nonoperating owner has the burden of proof as to such matter.

3 Williams & Meyers, Oil and Gas Law § 650.3 (2020) (citations omitted).

Critically, "[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Jovic v. Legal Sea Foods, LLC*, 2:16-cv-01586 (WHW)(CLW), 2018 WL 5077900, at *3 (D.N.J. Oct. 18, 2018) (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001)); *Gagliardi v. Equifax Info. Servs., LLC*, Civ. No. 09–1612, 2011 WL 337331, at *10 (W.D. Pa. Feb. 3, 2011). Here, Defendant has pointed to an absence of proof on Plaintiffs' part, citing the testimony of Mr. and Ms. Tennant and Mr. McIlvaine that they have no evidence that the post-production costs deducted from their royalty payments did not result in a net increase in the value of the gas produced under the Leases. (*See* Docket No. 44 at 23; *see supra* at 6 (summarizing Plaintiffs' testimony that they have no evidence)). Therefore, even if the Court were to broadly construe Plaintiffs' breach of contract claim as alleging that Defendant breached the Leases by improperly deducting post-production costs from their royalty payments, Defendant still is entitled to summary judgment because Plaintiffs concede they have no evidence

to support such a claim.[8]

## VI. CONCLUSION

Plaintiffs' breach of contract claim fails because the plain and unambiguous language of Addendum ¶ 12 does not impose upon Defendant a duty to demonstrate that post-production costs deducted from Plaintiffs' royalty payments resulted in a net increase in value of gas produced under the Leases. Even if the Court were to construe Plaintiffs' breach of contract claim as alleging that Defendant improperly deducted post-production costs from their royalty payments, Plaintiffs have not met their summary judgment burden on such claim. Accordingly, Defendant's Motion for Summary Judgment (Docket No. 43) is granted and Plaintiffs' Cross-Motion for Partial Summary Judgment (Docket No. 46) is denied.

An appropriate Order follows.

*W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:   September 21, 2021

cc/ecf:  All counsel of record

---

[8]   Given that Defendant is entitled to summary judgment for the reasons discussed herein, the Court need not address Defendant's additional argument that the record evidence establishes that the post-production costs it incurs result in an increase in the value of the gas produced under the Leases. (*See* Docket Nos. 44 at 24-25; 49 at 16-17).